**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee,*

v.

ALPHONSO BUSTER GILBERT, SR.,
　　　　　　　*Defendant-Appellant.*

No. 04-5004

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(CR-03-109)

Argued: October 26, 2005

Decided: November 28, 2005

Before WILKINSON, WILLIAMS, and TRAXLER, Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Williams and Judge Traxler joined.

---

### COUNSEL

**ARGUED:** Paul Anthony Dull, BRUMBERG, MACKEY & WALL, P.L.C., Roanoke, Virginia, for Appellant. Ronald Andrew Bassford, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee. **ON BRIEF:** John L. Brownlee, United States Attorney, Jill Lowell, Third Year Practice Law Student, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

**OPINION**

WILKINSON, Circuit Judge:

The defendant in this case seeks to overturn his conviction as a felon in possession of a firearm by invoking an affirmative defense of "innocent possession." He claims that 18 U.S.C. § 922(g)(1) (2000) does not apply when a defendant can show that his possession was both transitory and without illicit motive. We find such a defense to be wholly absent from the statutory text and decline to subvert the congressional scheme by imposing a judicially crafted exception. We moreover conclude that even if the defense did exist, it would not apply to the facts of this case. We therefore affirm the conviction.

I.

Some time after 8:00 a.m. on June 12, 2003, a concerned motorist called the police department in Roanoke, Virginia, to report a suspicious person on a public street carrying what appeared to be firearms. Two policemen in patrol cars, Officers William Fike and Scott Terwilliger, responded to the ensuing dispatch call. Approaching the scene, each independently observed the defendant, Alphonso Gilbert, walking across the Tenth Street bridge toting a backpack and a bundle of objects wrapped in a brown blanket. The wooden stock of a weapon could be seen protruding out of the end of the blanket.

Officer Fike exited his vehicle, approached Gilbert from behind, and ordered him to stop. After Officer Terwilliger arrived, Officer Fike inventoried the contents of the bundle and the backpack. The bundle contained two shotguns, a .22-gauge rifle, and an air rifle. The backpack contained ammunition, eight knives, and a set of brass knuckles. Gilbert admitted to the officers that he was a convicted felon, and the officers placed him under arrest for possession of firearms.

At trial, Gilbert testified to the events surrounding his possession of the weapons. He claimed that he had happened upon the bundle and the backpack approximately ten to fifteen minutes prior to encountering the officers. He had been on his way to work when he

spotted what appeared to be some aluminum and sheet metal in a nearby alley. Because his son collects scrap metal for sale to a junkyard, Gilbert decided to enter the alley and investigate. Under the metal debris, he found the blanket containing the firearms and the backpack containing the ammunition and additional weapons.

Gilbert testified that he decided to turn over the firearms to the police. He was aware that the police would pay a fifty-dollar reward for each gun, and he claimed to be concerned about leaving the weapons in a place that he knew to be frequented both by children and by people drinking alcohol. The police station was only five blocks away, but Gilbert decided that a nearby payphone, which lay in the opposite direction, was a better option. He gathered up all of the weapons from their hiding place and carried them out to the street. He discovered, however, that the telephone was broken.

Since carrying the weapons to the payphone had taken him further away from the police station, Gilbert decided that his best course at this point was to continue in the direction he was already traveling. He set out to carry the backpack and the firearms up Tenth Street and across a bridge to find an acquaintance who ran an engine shop. Gilbert was hoping that this acquaintance would give him and the guns a ride back to the police station. Gilbert had been walking along the street with the weapons for about ten to fifteen minutes and had traveled roughly four "short" blocks when he encountered the officers responding to the concerned motorist's call.

The officers' testimony differed from that of Gilbert. While Gilbert testified that he tried to flag down one of the officers as the officer passed in his marked police car, each officer testified that he did not see Gilbert make such an attempt. Gilbert also testified that he voluntarily relinquished the guns when Officer Fike came up to him, but Officer Fike testified that Gilbert put down the guns only when ordered to do so and then only "reluctantly."

The testimony is also in conflict concerning the explanation Gilbert offered at the time for his activities. According to Gilbert, he immediately told Officer Fike: "Look, I'm going to turn them into you anyway. I've got a felony on my record and I don't want to be involved in no guns like that." But Officer Fike testified that Gilbert's first

reaction upon being stopped was instead to ask what he had done. Both officers stated that Gilbert never explained that he was taking the weapons to the police. Instead, he claimed that he was taking them across the bridge to turn them over to a friend who would be interested in them. Gilbert agreed with the officers' testimony that he could not recall the name of this friend at the time of the police encounter. Gilbert did describe to the officers the location where he claimed to have found the weapons, but when Officer Fike went to investigate, he was unable to locate the debris under which Gilbert claimed the bundle and backpack had been hidden.

The government indicted Gilbert for violation of 18 U.S.C. § 922(g)(1), which criminalizes a felon's possession of a firearm that has traveled in interstate commerce, and 18 U.S.C. § 924(e) (2000 & Supp. II), which imposes a mandatory minimum sentence when such a felon has a history of violent or drug offenses. Gilbert stipulated to the elements of the § 922(g) offense: that he was a convicted felon, that he knowingly possessed firearms, and that at least one of the firearms had traveled in interstate commerce. Nevertheless, he asserted in a pre-trial motion that he was entitled to an affirmative defense of "innocent possession," because he had no illicit motive in possessing the guns and had attempted to dispose of them quickly.

The district court held a bench trial solely on the issue of innocent possession. Following the trial, the district court found, based upon the evidence and stipulations, that Gilbert was a convicted felon who had "knowingly and willfully had in his possession a firearm" that had moved in interstate commerce. It then concluded:

> I think, I have to find him guilty based on this evidence. Although, I think he's a sincere gentleman. I expect he, I think he probably found [the guns] but, I don't think that gets him an innocent verdict. . . . [H]e knowingly picked the firearms up and was carrying them. If he had picked them up and headed towards the police station . . . it might have been a different situation. But here, according to the officers, . . . he wanted to know why he was being stopped. And then he was reluctant in laying them down. I find that there is no defense to the charge and that he is guilty as charged in the one (1) count indictment.

   The district court revisited the innocent possession issue at sentencing. It stated that "I don't think there's any intent on his part to do anything wrong with these weapons," and it noted that "I want the record to show that if the Fourth Circuit . . . adopted the innocent possession defense, then I would have found him not guilty." Gilbert appeals.

II.

   The sole issue on appeal is whether we should reverse Gilbert's conviction as a felon-in-possession under 18 U.S.C. § 922(g)(1) on the ground that he qualifies for an "innocent possession" defense. Gilbert requests that we find an exception to § 922(g)(1) when a felon has no illicit motive and attempts to quickly rid himself of the weapon. We decline to adopt such an exception.

   Section 922(g)(1) states that

>    It shall be unlawful for any person . . . who has been convicted in any court of[ ] a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

This text simply does not allow for the exception that Gilbert requests. We have previously explained that the elements required for conviction under § 922(g)(1) are:

>    (1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed, transported, shipped, or received, the firearm; and (3) the possession was in or affecting commerce, because the firearm had travelled in interstate or foreign commerce at some point during its existence.

*United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (en banc). So long as these three elements are met — and Gilbert has stipulated

to them here — the government has conclusively established culpability. The statute in no way invites investigation into why the defendant possessed a firearm or how long that possession lasted.

Indeed, such an inquiry would undermine the statutory scheme governing felon-in-possession offenses, which expressly avoids inquiring into the motive of a felon caught possessing a firearm. We had the opportunity to examine that scheme at length in *Langley*. We found there that the mens rea applicable to the possession element of § 922(g)(1) was located in the default penalty provision for that statute, 18 U.S.C. § 924(a)(2). *See Langley*, 62 F.3d 604-06 & n.4. Since § 924(a)(2) provides for punishment only where a defendant "*knowingly* violates" § 922(g)(1), knowledge of possession is necessary for conviction. 18 U.S.C. § 924(a)(2) (2000) (emphasis added); *see Langley*, 62 F.3d 604-06. In applying the mens rea of knowledge, Congress specifically declined to require the showing of willfulness necessary to punish violations of certain other subsections of § 922. *Id.* at 605; *see also* 18 U.S.C. § 924(a)(1)(D) (2000) (imposing punishment for "willful[ ]" violations of certain provisions of § 922); *Bryan v. United States*, 524 U.S. 184, 188 (1998) (noting the different mens rea requirements). Unlike a mens rea of willfulness, which generally requires a "bad purpose," the mens rea of knowledge in most contexts "merely requires proof of knowledge of the facts that constitute the offense." *Bryan*, 524 U.S. at 191, 193 (internal quotation marks omitted).

Gilbert's proposed innocent possession defense would therefore rewrite the statute. If we were to accept his view, purpose would suddenly become an issue in a great number of cases. A felon caught possessing a firearm could force the government to litigate motive simply by asserting, as Gilbert does here, that he had just found the weapon and was on his way to turn it in to the police. Had Congress intended such a result, it would have required a willful violation of the statute, rather than merely a knowing one. As we determined in *Langley*, Congress deliberately decided to do otherwise. *See* 62 F.3d at 605.

Our recent decision in *United States v. Scott*, 424 F.3d 431 (4th Cir. 2005), is not to the contrary. In *Scott*, the defendant argued that he did not violate § 922(g)(1) when "he knew a passenger in his car had physical possession of a gun, [but] he (Scott) never had the subjective

intent to exercise dominion and control over the gun." *Id.* at 433. Here, by contrast, Gilbert freely admits possession was voluntary and intentional. *Id.* at 435. He goes well beyond *Scott* in requesting an affirmative defense based upon the allegedly innocent purpose behind that possession. *Scott*'s requirement that a felon intend his possession of a firearm does not read a much broader motive requirement into the statute.

Gilbert maintains that we should nevertheless recognize his suggested innocent possession defense because we have already recognized the plausibility of a justification defense to a felon-in-possession charge. *See, e.g.*, *United States v. Perrin*, 45 F.3d 869, 873-75 (4th Cir. 1995). We have suggested that a felon may assert a defense of justification in the narrow circumstance where, inter alia, he was "'under a present or imminent threat of death or injury'" and possessing a firearm was the only reasonable alterative to avoid the threatened harm. *Id.* at 874 (quoting *United States v. Crittendon*, 883 F.2d 326, 330 (4th Cir. 1989)).

Even were we to assume that the possibility of one defense suggests the presence of an entirely different one, there are sound reasons why justification is plausible but innocent possession is not. *Accord United States v. Teemer*, 394 F.3d 59, 64 (1st Cir. 2005). First, as we noted in *Crittendon*, justification is a common-law criminal defense, and "'Congress in enacting criminal statutes legislates against a background of Anglo-Saxon common law.'" 883 F.2d 329 (quoting *United States v. Bailey*, 444 U.S. 394, 415 n.11 (1980)). Gilbert presents no such pedigree for his proposed defense of innocent possession. Second, because the courts of appeals have construed the justification defense "very narrowly" and applied it "only on the rarest of occasions," *Perrin*, 45 F.3d at 874, 875, the scenarios in which a defendant could even colorably assert its applicability are extraordinarily uncommon. By contrast, a claim of innocent possession may arise in a wide swath of cases: a felon might plausibly assert it in any case where the purpose and duration of his firearm possession are known only to him. Thus, unlike justification, the innocent possession defense could create an exception that swallows the rule.

Accordingly, we respectfully disagree with our one sister circuit that has recognized an innocent possession defense to a § 922(g)(1)

charge, *see United States v. Mason*, 233 F.3d 619, 623 (D.C. Cir. 2001), and join the two that have expressly rejected one, *see Teemer*, 394 F.3d at 64-65; *United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir. 2003); *see also United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999) (rejecting contention that knowledgeable and unjustified possession for "a mere second or two" falls outside § 922(g)); *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (rejecting contention that possession of a firearm "for an innocent reason" falls outside § 922(g)); *United States v. Rutledge*, 33 F.3d 671, 673 (6th Cir. 1994) (rejecting contention that possession of a firearm "for innocent purposes" was "a legitimate defense" to § 922(g)).

Indeed, a felon-in-possession charge is the very last context in which such a defense ought to be countenanced. In enacting § 922(g)(1), "Congress sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society." *Small v. United States*, 125 S. Ct. 1752, 1758 (2005) (internal quotation marks omitted). Extending defenses to § 922(g)(1) beyond the justification defense set forth above would run athwart this basic congressional purpose. In the interest of public safety, felons are simply not people whom society trusts to possess firearms "innocently."

### III.

Moreover, even if the statutory scheme allowed us to recognize an innocent possession defense, the defense would be unavailable here. Gilbert claims that this is an innocent possession case, and the district court made some comments to similar effect. But even if we were to take Gilbert's version of events as true,* we cannot agree.

Gilbert's possession of the guns was needlessly prolonged, and his actions provide no objective evidence of his claimed innocent motive. It was not necessary for Gilbert to extract the weapons from underneath the debris in the first place: they were well-hidden and were

---

*The testimony of the officers of course conflicts with Gilbert's on several important points. It is unclear whose testimony the district court found more credible, and we will assume for purposes of argument that Gilbert should be taken at his word.

thus a pointless and dangerous encumbrance if his plan was simply to find a phone and call the police. And even if Gilbert were for some reason determined to turn the guns in himself, the reasonable way to accomplish this objective would have been to head directly to the police station, which was a mere five blocks away. But Gilbert instead proceeded to travel an equivalent distance in precisely the opposite direction, purportedly hoping to get a ride back to the station from an acquaintance whose name he could not even recall. Thus, the innocent possession defense would not apply even under the more permissive standards of our sister circuit. *See Mason*, 233 F.3d at 624 (stating that to qualify for innocent possession, a defendant must be attempting to relinquish a firearm to the police "with immediacy and through a reasonable course of conduct").

## IV.

The judgment of the district court is therefore

*AFFIRMED*.