**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

WILLIAM JOHNSON,
            *Defendant-Appellant.*

No. 05-10708

D.C. No.
CR-03-00369-RCJ

OPINION

Appeal from the United States District Court
for the District of Nevada
Robert C. Jones, District Judge, Presiding

Argued and Submitted
June 14, 2006—San Francisco, California

Filed August 29, 2006

Before: Procter Hug, Jr., and Diarmuid F. O'Scannlain,
Circuit Judges, and Jeffrey T. Miller,* District Judge.

Opinion by Judge O'Scannlain

*The Honorable Jeffrey T. Miller, United States District Judge for the Southern District of California, sitting by designation.

10369

## COUNSEL

Cynthia S. Hahn, Assistant Federal Public Defender, Reno, Nevada, argued the cause for the appellant. Franny A. Forsman, Federal Public Defender, and Jason F. Carr, Assistant

Federal Public Defender, Las Vegas, Nevada, were on the brief.

William R. Reed, Assistant United States Attorney, Las Vegas, Nevada, argued the cause for the appellee and was on the brief. Daniel G. Bogden, United States Attorney, and Robert L. Ellman, Chief, Appellate Division, were also on the brief.

---

## OPINION

O'SCANNLAIN, Circuit Judge:

We are asked to decide whether there exists an "innocent possession" defense that would excuse a defendant for being a felon in possession of a firearm if he had obtained it innocently and his possession was transitory.

### I

### A

On August 5, 2003, Shawn Romprey, an officer with the Las Vegas Metropolitan Police Department, was dispatched to investigate an alleged assault and robbery. The victim reported to the officer that the assailant was the appellant, William Johnson, and that the incident had taken place at Johnson's apartment.

Officer Romprey then went to Johnson's apartment, where one Jenny Woodard, Johnson's cohabiting girlfriend, granted him permission to enter the apartment. In the bedroom, Officer Romprey discovered a silver firearm lying in plain view. Next to the weapon was a wallet in which the officer could plainly see Johnson's Social Security card. Woodard informed the officer that the gun belonged to Johnson.

Officer Romprey next went to his patrol unit to investigate Johnson's criminal background. Finding that Johnson had been previously convicted of a felony,[1] the officer prepared a "consent to search" form and obtained Woodard's signature after providing her with sufficient time to read the document. He then searched the apartment and seized the firearm and some ammunition.

After leaving the apartment, Officer Romprey received word that Johnson had turned up at City Hall's "plaza desk," a station at which citizens are able to file police reports. There Johnson had voluntarily given the following statement:

> I was on my way home from the Western Hotell [sic] & casino. I walked down the alley I looked into a trash been [sic] on the left side of the alley I saw a gun with no clipp [sic] and no Bullet was in the chamber I then put the 45 platnum [sic] a.c.p. in my Pocket their [sic] was a VONS trash bag I looked in and their [sic] I found a clip with 4 Rounds I unloaded the clip took the gun to my house then got on the buss [sic] came to the Police Dept after asking Neighbors I was playing with the gun I don't remember if it was put back together

Johnson had admitted to the police at City Hall that he was an "ex-felon." Johnson was thereupon arrested and held at the Clark County Detention Center.

## B

On August 20, 2003, a federal grand jury indicted Johnson on a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). The indictment alleged

---

[1]At trial, Johnson admitted that he had been convicted of battery with substantial bodily harm in 2004, larceny from a person in 2004, receiving stolen property in 1997, and robbery in 1994.

that Johnson "did knowingly possess an AMT, model Backup, .45 caliber pistol, serial number DL20610."

Johnson entered a plea of not guilty and the case proceeded to trial by jury.[2] The government's case consisted primarily of Officer Romprey's testimony. The prosecutor also played recordings of phone calls which Johnson had placed to Woodard from the Clark County Detention Center on August 5, 2003. Among other things, the recordings indicated that before Johnson voluntarily entered the City Hall police station he may have received word from Woodard via a third party that the police had searched the apartment and seized the firearm. Johnson testified in his own defense, stating that he had found the gun near a school and that his only intention in possessing the weapon was to turn it over to the police.

At the close of evidence, Johnson submitted to the district court a proposed jury instruction which provided as follows:

> Innocent Possession legally excuses the crime of Felon in Possession of a Firearm.
>
> The defendant must prove Innocent Possession by a preponderance of the evidence. A preponderance of the evidence means that you must be persuaded that the things the defendant seeks to prove are more probably true than not true.
>
> The legal excuse of Innocent Possession applies only if at the time of the offense charged the defendant can establish the following:

---

[2]Johnson filed a pretrial motion to suppress the fruit of Officer Romprey's search of his apartment; he alleged that the police " 'barged' into his residence without permission and unlawfully seized the gun," thus tainting the consent subsequently given by his girlfriend. The district court held an evidentiary hearing on July 14 and 29, 2004. It found Woodard's testimony not credible and denied the motion. Johnson does not appeal this decision.

1.  That the firearm was attained inno-
    cently and held with no illicit purpose.

2.  Possession of the firearm was transi-
    tory.

Transitory means that in light of the circumstances
the defendant took adequate measures to rid himself
of possession of the firearm as promptly as reason-
ably possible.

The court heard argument from counsel and declined to give
the proposed instruction. However, the court allowed counsel
to argue simply that Johnson lacked the requisite "intent" to
possess the weapon because he intended to hand it over to the
police.

After deliberating for about 90 minutes, the jury returned
a guilty verdict. Later, the district court sentenced Johnson to
77 months in prison to be followed by a three-year term of
supervised release.

Johnson filed a timely notice of appeal.

II

Johnson argues that the district court erred in refusing to
instruct the jury according to his proposed "innocent posses-
sion" defense. A criminal defendant is entitled to a proposed
jury instruction only "if it is supported by law and has some
foundation in evidence." *United States v. Escobar de Bright*,
742 F.2d 1196, 1198 (9th Cir. 1984) (internal quotation marks
omitted).

A

We consider first the facts of this case to determine whether

the proposed instruction had any foundation in the evidence presented at trial.[3]

1

Johnson argues that the evidence in this case warranted the instruction. He relies primarily on his own testimony, and he submits that he "made a reasonably prompt effort to provide the weapon to law enforcement."

The government disagrees. Even if this court were to adopt the "innocent possession" defense, it says, Johnson would not have been entitled to the instruction because the evidence clearly shows that he did not take adequate measures to rid himself of the firearm as promptly as reasonably possible. The government suggests that Johnson took the gun home, played with it, and contacted the police only after an altercation took place in his apartment.

2

[1] A criminal defendant has a constitutional right to have the jury instructed according to his theory of the case if it has "some foundation in evidence," and he need only show that "there is evidence upon which the jury could rationally find for the defendant." *United States v. Morton*, 999 F.2d 435, 437 (9th Cir. 1993) (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

[2] We have cautioned that a "mere scintilla" of evidence supporting the defendant's theory is not sufficient to warrant

---

[3]We review for abuse of discretion whether the factual foundation for a proposed instruction exists. *See United States v. Medrano*, 5 F.3d 1214, 1218 (9th Cir. 1993). Having reviewed the record, we are persuaded that the district court failed accurately to apply the proposed instruction to the facts in evidence. *See, e.g.*, *Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1085-86 (9th Cir. 2003) (noting that a court abuses its discretion where it bases its decision on an inaccurate view of the law).

a defense instruction. *See United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir. 1984) (per curiam). However, we have also repeatedly stated that the defendant is entitled to his proposed instruction even if his evidence is "weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Sotelo-Murillo*, 887 F.2d 176, 178 (9th Cir. 1989) (internal quotation marks omitted); *accord United States v. Sanchez-Lima*, 161 F.3d 545, 549 (9th Cir. 1998). In assessing the evidence, we will leave credibility determinations to the jury, *Sotelo-Murillo*, 887 F.3d at 182, and we will bear in mind that Johnson's burden under the proposed affirmative defense was merely a preponderance-of-the-evidence standard, *cf. United States v. Bello-Bahena*, 411 F.3d 1083, 1091 (9th Cir. 2005).

We therefore consider the account Johnson provided at trial. He explained that sometime in the "late afternoon" of August 5, 2003, as he was walking home from a nearby casino, he found the firearm and a grocery bag containing ammunition in a garbage bin. This garbage bin was located in an alley near the Las Vegas Academy, a high school. The alley was also "about fifty yards" from Johnson's apartment. He put the weapon in his pocket and picked up the ammunition. According to Johnson, he "wasn't really thinking," but he "thought that was the best thing to do . . . 'cause it was right by a school."

Johnson further explained that he immediately consulted one of his neighbors, an individual he could identify only as "Shahed," who advised Johnson to take the firearm to the police station. Johnson did not know the location of the police station, and so the neighbor provided him with directions by bus.

Johnson testified that he next went home, "made sure [the gun] wasn't loaded," and placed it on the bed. Although on his way to the police station to report finding the firearm, he left the firearm at home because he "didn't think it was safe to get on the bus with it." Before he left, however, the alleged

assault and robbery occurred. Johnson explained that the altercation detained him for approximately 15 minutes, and that he left for the police station immediately thereafter.[4]

According to his account, Johnson, traveling by foot, stopped on the way at a Western Union office in order to wire money to a friend in California. This stop took only a "short period," and then Johnson caught the bus that took him to the Las Vegas City Hall police desk. He arrived at the police station at approximately 7:45 p.m.,[5] where he filed his voluntary statement.

As noted, the jury instruction Johnson proposed would have required him to show that he obtained the firearm innocently and with no illicit purpose, and that he took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible. *See United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2001).

[3] Surely, Johnson's story is weakly supported and suffers from various problems.[6] But these problems could only have been resolved by determining the extent to which Johnson tes-

---

[4]Although Johnson could not recall precisely when he left his apartment, the police received the call reporting the alleged assault and robbery at approximately 5:47 p.m.

[5]Johnson's voluntary statement indicates a time of 8:30 p.m., but Johnson testified that there was considerable delay—of perhaps 45 minutes—from the time he arrived until the time at which he penned his statement.

[6]At trial, the prosecutor questioned why Johnson took the gun home, but Johnson testified that he did so only to secure and to unload it. The prosecutor also asked why Johnson did not walk to the police station, but Johnson explained that he only knew how to get to there by bus according to his neighbor's instructions. He did not take the gun with him because he did not think it safe to carry the gun on the bus. The prosecution played a recorded phone conversation which suggested that Woodard may have tipped off Johnson via a third party that the police were searching for him, but on the stand Johnson denied knowing that the police had searched his apartment and seized the firearm. Johnson's story was subject to vigorous cross-examination on several other points, as well.

tified credibly regarding his actions and intent—issues beyond our resolution in this appeal. Setting such credibility issues aside, we are faced with Johnson's testimony that he found the gun near a school and possessed it for about two hours; he stopped only at home to secure the weapon and at a single errand on the way to the police station. In light of the low evidentiary threshold Johnson must clear—"some foundation in evidence," and something more than a "more scintilla"—we must conclude that he met his burden.[7] Assuming the innocent possession instruction had a foundation in law, a jury should have determined whether Johnson provided credible testimony sufficient to satisfy the defense's standards.

[4] In short, Johnson's claim is "plausible, albeit debatable. Such cases are for the jury to decide." *Mason*, 233 F.3d at 624.

---

[7]Johnson's account provided debatable grounds for the innocent and transitory nature of his gun possession. We note the two illustrative hypothetical situations posed by the *Mason* court. In the first, the court posited a situation in which a truck driver, having left his truck to make a delivery, returned to find that someone had broken into the vehicle and had left a gun on the seat. If the driver were to have removed the ammunition and immediately called "911," the court thought that surely "a judgment of acquittal would be in order." 233 F.3d at 624.

By contrast, the court opined that a trial judge should reject the proposed innocent possession instruction if the same truck driver had hidden the gun and ammunition in his truck; had finished his deliveries and said nothing to anyone about the gun; had put the gun in his pocket at the end of the day and had taken it home to consider what to do with it; had retained the gun overnight; and had ceased possessing the gun only when it fell out of his pocket the next day and was discovered by a police officer. The court concluded that such "defendant could not show transitory possession." *Id.*

The evidence here falls somewhere in between but is, we think, much more like the first hypothetical then the second.

B

Given the foregoing conclusion, we must consider whether the proposed instruction was "supported by law." *See Escobar de Bright*, 742 F.2d at 1198.[8]

1

Johnson requests that we adopt the innocent possession defense as articulated by the D.C. Circuit in *United States v. Mason*. *See* 233 F.3d at 624. He reasons that "[t]he intent of the felon in possession statute is to prevent high-risk individuals from possessing weapons because of the heightened risk of harm to citizens incurred by that possession." Johnson also suggests that "[i]t is counterproductive and unnecessarily punitive to send an individual to jail for a transitory possession that [occurs] for an innocent reason."

The government responds that the felon-in-possession statute "contains a *mens rea* element requiring knowledge, rather than willfulness, which requires proof of 'bad purpose.' " As such, it contends that the proposed instruction "would undermine the statutory scheme that governs felon-in-possession offenses, which expressly avoids inquiring into the motive of a felon caught possessing a firearm."

2

**[5]** This circuit has never recognized—nor explicitly rejected—an innocent possession defense to a felon-in-possession charge under 18 U.S.C. § 922(g)(1).[9] Attention to

---

[8]Our review with respect to this question is de novo. *See Medrano*, 5 F.3d at 1218.

[9]We have, however, recognized a defense of "justification," which requires, among other things, that the defendant "was under unlawful and present threat of death or serious bodily injury." *See United States v. Beasley*, 346 F.3d 930, 933 & n.2 (9th Cir. 2003) (citing *United States v. Gomez*, 92 F.3d 770, 775 (9th Cir. 1996)). That defense is not applicable here, and Johnson does not contend otherwise.

the statutory text and the opinions of our sister circuits seems appropriate.

a

Johnson relies entirely on *Mason*, which remains the only circuit-level authority for his proposed defense.

The facts of *Mason* are similar to Johnson's account in this case: The defendant found a gun near a school, and "took possession of the gun only to keep it out of the reach of the young children at the school, fully intending to give the weapon to a police officer." Mason was arrested with the gun in his possession before he could turn it over to the police, and he was charged with violating 18 U.S.C. § 922(g)(1). *See* 233 F.3d at 620-22.

Relying on the government's concession at oral argument and various state-court decisions, a panel of the D.C. Circuit adopted the defense. The court was primarily concerned about a hypothetical situation in which a felon "innocently pick[ed] up a bag containing a gun (not knowing what was in the bag)," and then later discovered its contents. The court "[could not] imagine" that Congress intended that such felon be punished; it found "nothing to indicate that Congress intended such a harsh and absurd result." *Id.* at 623. The court then defined the innocent possession defense along the lines of Johnson's proposed jury instruction, having become satisfied that the defense "does not offend the statute's goal of keeping guns out of the hands of convicted felons." *Id.* at 624.

b

By contrast, our colleagues in the Fourth Circuit have observed that the defense Johnson proposes is "wholly absent from the statutory text." *United States v. Gilbert*, 430 F.3d 215, 216 (4th Cir. 2005); *see* 18 U.S.C. § 922(g)(1) (providing that "[i]t shall be unlawful for any person . . . who has

been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . [to] possess in or affecting commerce, any firearm or ammunition").

**[6]** Like the *Mason* court, Johnson thinks that it is the retention of a firearm, not its brief possession, that should be criminalized. But like the *Gilbert* court, which explicitly rejected the defense, we note that our own case law provides for only "three elements which the government must prove beyond a reasonable doubt: (1) that the defendant was a convicted felon; (2) that the defendant was in knowing possession of a firearm; and (3) that the firearm was in or affecting interstate commerce." *United States v. Beasley*, 346 F.3d 930, 933-34 (9th Cir. 2003). The statute explicitly punishes "possess[ion]," not retention, and thus "in no way invites investigation into why the defendant possessed a firearm or how long that possession lasted." *Gilbert*, 430 F.3d at 218.

**[7]** Not only is the proposed defense absent from the text, but, as the government suggests, Congress also explicitly adopted a *mens rea* requirement that negates it. Section 924(a)(2) of Title 18 of the United States Code states that "[w]hoever *knowingly* violates" § 922(g) shall be fined or imprisoned. (Emphasis added.) In contrast, Congress imposed a *mens rea* requirement of "willfulness" in another, related section. *See* 18 U.S.C. § 924(a)(1)(D). "Knowledge" refers only to the defendant's knowingly possessing the gun, and it does not require knowledge that he is violating the law. *See, e.g.*, *United States v. Kafka*, 222 F.3d 1129, 1131 (9th Cir. 2000). The statute thus leaves Johnson no room to argue that he should be acquitted because his gun possession was reasonable and in good faith, and thus without intention to violate the law. *See Beasley*, 346 F.3d at 934 ("[T]he felon in possession statute . . . has no specific criminal intent element."). More simply stated, only the "willfully" *mens rea* invites inquiry into whether the defendant had bad motive or intent. *Gilbert*, 430 F.3d at 219 (citing *Bryan v. United States*, 524 U.S. 184, 188-93 (1998)); *see also* BLACK'S LAW DICTIO-

NARY (8th ed. 2004) (noting several definitions of "willful," one of which holds " 'that the requirement added by such a word is not satisfied unless there is bad purpose or evil intent' " (quoting ROLLIN M. PERKINS & RONALD N. BOYCE, CRIMINAL LAW 875-76 (3d ed. 1982))).

c

**[8]** Next, we observe that there is no clearly expressed legislative intent that the proposed defense apply to the felon-in-possession statute. Indeed, all indications are to the contrary. In *United States v. Teemer*, 394 F.3d 59 (1st Cir. 2005), in which the First Circuit rejected a proposed defense under § 922(g) for innocent "fleeting" or "transitory" possession, the court noted the following:

> Neither the language of the felon-in-possession statute, nor its evident purpose, encourage the court to develop defenses that leave much room for benign transitory possession. The statute bans possession outright without regard to how great a danger exists of misuse in the particular case. Indeed, one piece of legislative history of an ancestor statute says that the aim was "to prevent the crook and gangster, racketeer and fugitive from justice from being able to purchase or in any way come in contact with firearms of any kind."

*Id.* at 64 (quoting *Barrett v. United States*, 423 U.S. 212, 220 (1976)).

We also note, quite simply, that Congress knows how to create an affirmative defense when it wishes to do so. *See, e.g.*, 10 U.S.C. § 920(d)(1) (defense to statutory rape for military personnel); 18 U.S.C. § 17 (insanity defense); *id.* § 176(c) (defense against forfeiture of a biological agent, toxin, or delivery system); *id.* § 229B(c) (same in regard to chemical weapons); *id.* § 373(c) (defense against solicitation

to commit a crime of violence); *id.* § 983(d) (innocent-owner defense against civil forfeiture); *id.* § 3146(c) (defense against failure to appear in court).

**[9]** Even more tellingly, Congress has provided for an affirmative defense in the context of a criminal charge quite similar to the present one. *See id.* § 931(b) (providing for an affirmative defense against a charge that a violent felon has purchased or otherwise come into ownership or possession of body armor; felon can show that he obtained prior written certification from an employer, that use of such body armor is necessary for the safe performance of lawful business activity, and that the use and possession by the defendant were limited to the course of such performance). Congress has also written into a federal statute the very kind of innocent possession defense that Johnson asks us to now write into the felon-in-possession statute. *See id.* § 1466A(e) (providing for an affirmative defense against the charge of knowingly possessing a visual depiction of a minor engaging in sexually explicit conduct; defendant may show that he possessed fewer than three such depictions, that he took reasonable steps to destroy the depictions or reported the matter to law enforcement, and that he provided law enforcement with access to the depictions). And in yet another statute, Congress has provided for an affirmative defense where the defendant simply had good intentions. *See id.* § 1512(d) (providing for a defense against a charge of witness tampering where the defendant's "conduct consisted solely of lawful conduct and that the defendant's sole *intention* was to encourage, induce, or cause the other person to testify truthfully" (emphasis added)).

**[10]** That no such defense is provided for § 922(g) strongly suggests that no such defense was intended.

d

As a policy matter, the proposed defense would invite perjury and thus unduly increase the government's burden in litigating these cases. As the Fourth Circuit court suggested,

If we were to accept [the innocent possession defense], purpose would suddenly become an issue in a great number of cases. A felon caught possessing a firearm could force the government to litigate motive simply by asserting, as Gilbert does here, that he had just found the weapon and was on his way to turn it in to the police.

*Gilbert*, 430 F.3d at 219. This case illustrates the difficulty the innocent possession defense would create; as in *Gilbert*, the circumstances are such that only Johnson truly knows of the nature and extent of his gun possession. We will not require the government to contest motive in every § 922 case where the facts will bear an uncorroborated assertion by the defendant that he innocently came upon a firearm and was preparing to turn it over to the authorities when, alas, he was arrested.[10]

Moreover, the imposition of an innocent possession defense would thwart congressional purpose. As the *Gilbert* court pointed out, "In enacting § 922(g)(1), 'Congress sought to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society.' " 430 F.3d at 220 (quoting *Small v. United States*, 125 S. Ct. 1752, 1758 (2005)). The statute is precautionary; society deems the risk posed by felon-firearm possession too great even to entertain the possibility that some felons may innocently and temporarily possess such a weapon.

---

[10]Both the D.C. Circuit in *Mason* and the First Circuit in *Teemer* suggested hypothetical situations in which conviction under § 922(g)(1) would seem unjust. Johnson has presented no record "of abusive indictments for innocent contact [with a firearm], let alone convictions, that would warrant an effort to craft a general limitation." *Teemer*, 394 F.3d at 65. But even if he had made such a showing, we would defer to congressional statutory design. *See United States v. Logan*, 453 F.3d 804, 806 (7th Cir. 2006) ("The Supreme Court insists that statutes be enforced as written even when they seem mistaken or pointless—for it is exactly then that the temptation to substitute one's judgment for the legislature's is strongest.").

Indeed, the evidence adduced in this very case discredits the D.C. Circuit's belief that "it is the retention of [a firearm], rather than the brief possession for disposal . . . which poses the danger which is criminalized." *Mason*, 233 F.3d at 625 (internal quotation marks omitted). There is simply no bright line between possession and retention; danger may arise quickly, and long before the former has clearly become the latter. Johnson testified that he was in possession of the firearm for a short time, perhaps 15 minutes or more, while securing it at home before leaving for the police station. Yet in that short time an "altercation"—an alleged assault and robbery—took place in the immediate vicinity of the weapon. The very legislative premise of § 922(g)(1) is that Johnson, a convicted felon, was unacceptably likely to use that gun in such a situation.

As such, "the courts have ruled that federal firearms laws impose something approaching absolute liability." *United States v. Nolan*, 700 F.2d 479, 484 (9th Cir. 1983); *see also United States v. Mercado*, 412 F.3d 243, 251 (1st Cir. 2005) ("Even if the evidence established only that Mercado held the firearm for a few seconds, he could properly be convicted of possession within the meaning of § 922(g)."); *United States v. Funches*, 135 F.3d 1405, 1407 (11th Cir. 1998) (observing that § 922 "is a strict-liability offense which ordinarily renders the defendant's state of mind irrelevant"). We are not inclined to undermine that statutory design.

## III

**[11]** In light of the foregoing, we must respectfully disagree with our colleagues in the D.C. Circuit, and we decline Johnson's invitation to create an innocent possession defense here. By doing so, we join the First, Fourth, and Seventh Circuits.[11]

---

[11]The Seventh Circuit case is *United States v. Hendricks*, 319 F.3d 993 (7th Cir. 2003), where the court curtly rejected the proposed defense, explaining that it would only allow a defense of "justification." *Id.* at 1007.

We also find ourselves in accord with the Sixth and Eleventh Circuits, which have rejected defenses that similarly would have inquired into the circumstances and motivations for a convicted felon's gun possession.[12]

Accordingly, the conviction and sentence are **AFFIRMED**.

---

[12]*See United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) (rejecting claim that possession "was for an innocent reason," and stating that § 922(g) does not "focus on the motive or purpose of the current possession of firearms"); *United States v. Rutledge*, 33 F.3d 671, 673 (6th Cir. 1994) ("Rutledge's claim that he possessed the gun for innocent purposes was not a legitimate defense to the unlawful possession charges."). *But see United States v. Williams*, 389 F.3d 402, 405 (2d Cir. 2004) (suggesting that "circumstances 'may be imagined' where possession of a firearm is too fleeting to violate 18 U.S.C. [§] 922(g)"); *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999) (assuming that there may be a "fleeting possession" defense where the defendant's possession was momentary, and he either lacked knowledge that he possessed contraband or had a legally justifiable reason to possess it temporarily, such as for self-defense).