FILED
United States Court of Appeals
Tenth Circuit

April 29, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

    v.

JAMES E. BAKER,

      Defendant - Appellant.

No. 07-3002

---

Before **TACHA**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

---

    This matter is before the court to direct publication of the order denying rehearing entered originally on February 28, 2008. The Clerk is directed to reissue the order in its original form, but as a published order and dissent. The publication is nunc pro tunc to the original filing date.

Entered for the Court

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker, Clerk

FILED
United States Court of Appeals
Tenth Circuit

February 28, 2008

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JAMES E. BAKER,

      Defendant - Appellant.

No. 07-3002

---

**ORDER**

---

Before **TACHA**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

      Appellant's petition for rehearing is denied. Judge Holloway would grant panel rehearing.

      The petition for rehearing en banc was transmitted to all of the judges of the court who are in regular active service. A poll was called on the suggestion for en banc rehearing. The poll did not carry. Consequently, the request for en banc rehearing is denied. Judge McConnell dissents from the denial of the en banc rehearing. A copy of his dissent is attached to and incorporated into this order. Along with Judge McConnell, Judges Briscoe and Lucero voted to grant en banc

consideration.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

No. 07-3002, *United States v. Baker*

**McCONNELL**, J., dissenting from denial of rehearing en banc:

The panel holds categorically that defendants charged with the crime of being a felon in possession of ammunition, 18 U.S.C. § 922(g)(1), may not invoke the affirmative defense of "innocent possession." This means, for example, that a felon who spots ammunition on a playground and who picks it up for the purpose of conveying it to a responsible law enforcement authority, could be held guilty of the crime. That is a sufficiently important and troubling result that it warrants en banc review. Moreover, the logic of the decision suggests that federal courts may not recognize any unstated affirmative defense to a crime involving "knowing" possession of contraband beyond the narrow compass of defenses already recognized. Not only does the specific result conflict with a decision of the District of Columbia Circuit, but the broader reasoning is in tension with a recent Supreme Court decision.

The District of Columbia Circuit has held that a defendant may invoke the innocent possession defense to the charge of illegal possession of a firearm when he meets two requirements: "(1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—*i.e.*, in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible." *United States v. Mason*, 233 F.3d 619, 624 (D.C. Cir. 2000);

*see also Bieder v. United States*, 707 A.2d 781, 783–84 (D.C. 1998); *People v. Hurtado*, 54 Cal. Rptr. 2d 853, 858 (Cal. Ct. App. 1996). According to that court, the innocent possession defense "is necessarily narrow," and thus does not offend "the legislative purpose underlying § 922(g)(1)" of "keeping guns out of the hands of convicted felons." *Mason*, 233 F.3d at 624–35.

The panel opinion reached a contrary conclusion to that in *Mason*, primarily on the ground that the innocent possession defense is inconsistent with the statutory mens rea requirement of knowledge. "[B]y prohibiting knowing possession, the statute does not invite inquiry into the reason the defendant possessed the ammunition, as long as the defendant knew it was ammunition he possessed." *United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007). *See also id.* (making felons-in-possession guilty whenever they knowingly possess a weapon, without regard to how or why they came into possession or for how long possession was retained, is "precisely what Congress envisioned by prohibiting knowing, as opposed to willful, possession of ammunition."). The panel further reasoned that to recognize the defense "would expand the necessity defense," whereas the Supreme Court "has called into question the validity of the narrower necessity defense." *Id.* at 1326 (citing *United States v. Oakland Cannis Buyers' Co-op*, 532 U.S. 483, 490 (2001) (calling it an "open question whether federal courts ever have authority to recognize a necessity defense not provided by statute.")).

In its more recent decision in *Dixon v. United States*, 126 S. Ct. 2437 (2006), however, the Court implicitly resolved this open question, providing a justification for judicial crafting of common law defenses. With reference to the Safe Streets Act, which is the same statute at issue in this case, the Court stated that even though Congress did not mention any common law affirmative defenses, "we can safely assume that the 1968 Congress was familiar with . . . the long-established common-law rule" and that "[i]n light of Congress's silence on the issue, . . . it is up to the federal courts to effectuate the affirmative defense of duress as Congress may have contemplated it in an offense-specific context." *Id.* at 2446, 2447 (internal quotation marks omitted). Despite the lack of any statutory reference to the duress defense, the Court assumed the defense was available, noting that the Court has "previously made this assumption when addressing common-law affirmative defenses" in several prior cases. *Id.* at 2445 n. 7. *Cf.* Frank H. Easterbrook, *The Case of the Speluncean Explorers: Revisited*, 112 Harv. L. Rev. 1913, 1913–14 (1999) ("All three branches of government historically have been entitled to assess claims of justification—the legislature by specifying the prohibition and allowing exceptions, the executive by declining to prosecute (or by pardon after conviction), and the judiciary by developing defenses.").[1]

---

[1] The Fourth Circuit has suggested that the innocent possession defense is distinguishable from other affirmative defenses that are more deeply rooted in Anglo-Saxon common law. *United States v. Gilbert*, 430 F.3d 215, 219 (4th Cir.
(continued...)

Moreover, the *Dixon* Court made clear that the existence of an affirmative defense is not affected by whether the statutory mens rea is "knowing" or "willful."  At issue in *Dixon* were two firearms-related offenses, one of which (18 U.S.C. § 922(a)(6)) required that the offense be "knowing" and one of which (18 U.S.C. § 922(n)) required that the violation be committed willfully.[2]  The Court did not differentiate between the statutes for purposes of imputing an affirmative defense of duress.  Rather, the Court explained that "[l]ike the defense of necessity, the defense of duress does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly or willfully; instead, it allows the defendant to 'avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present.'" 126 S. Ct. at 2442 (quoting *United States v. Bailey*, 444 U.S. 394, 402 (1980)) (ellipses in original).  Thus, "even if we assume that petitioner's will was overborne by the threats made against her and her daughters, she still *knew* that she was making false statements." *Id.* at 2441 (emphasis in

[1](...continued)
2005).  *But see Dixon*, 126 S. Ct. at 2448 (Kennedy, J, concurring) (stating that courts may also look to newer and "innovative" sources that reflect the "insight gained over time as the legal process continues"). The extent to which unstated affirmative defenses should be limited to those rooted in long-established common law tradition is one issue we would have to consider if we reheard this case en banc.

[2] The latter mens rea requirement is contained in the relevant sentencing provision, 18 U.S.C. § 924(a)(1)(D), rather than in the definition of the crime itself.  *See Dixon*, 126 S. Ct. at 2441 n.3.

original).

So too with the affirmative defense of innocent possession. The affirmative defense does not serve to negate the necessary mens rea, but to excuse the crime even though the defendant was in knowing possession of the ammunition. The panel's reasoning that the mens rea element of knowledge demonstrates a congressional intention not to recognize the affirmative defense is therefore inconsistent with *Dixon*.

As this case illustrates, the current state of our jurisprudence regarding implicit affirmative defenses is in disarray. We recognize the affirmative defenses of necessity and duress despite the lack of textual basis in the statute, but invoke the lack of textual statutory basis as a reason for refusing to recognize other affirmative defenses of seemingly equal importance. *Baker*, 508 F.3d at 1325–26. At a time when the Supreme Court was cautioning that the authority of federal courts to craft such non-textual defenses was an "open question," *Oakland Cannabis Buyers' Co-op*, 532 U.S. at 490, we might well have been justified in drawing the line at the defenses we had previously recognized, and creating no more. *See United States v. Patton*, 451 F.3d 615, 638 (10th Cir. 2006) (McConnell, J.) (declining to recognize a broader version of the necessity defense, partly on authority of *Oakland Cannabis Buyers' Co-op*). But now that the Supreme Court has resolved that Congress enacts criminal statutes against the background of unstated common law defenses, which the federal courts are

charged with putting into effect, *Dixon*, 126 S. Ct. at 2447, it is time for us to reexamine this field and determine the applicability of common law defenses in a more coherent and consistent fashion.  This case would have provided an excellent opportunity to do so.

FILED
United States Court of Appeals
Tenth Circuit

December 6, 2007

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JAMES E. BAKER,

Defendant - Appellant.

No. 07-3002

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D. Ct. No. 06-CR-10129-JTM)**

John K. Henderson, Jr., Assistant Federal Public Defender, Office of the Federal Public Defender for the District of Kansas, Wichita, Kansas, appearing for Appellant.

Matt Treaster, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with him on the brief), Office of the United States Attorney for the District of Kansas, Wichita, Kansas, appearing for Appellee.

Before **TACHA**, Chief Circuit Judge, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Defendant-Appellant James Baker appeals his conviction for being a felon in possession of ammunition, as well as his sentence. We are called upon to

decide whether the jury should have been instructed on Mr. Baker's proposed "innocent possession" defense to being a felon in possession of ammunition and whether 18 U.S.C. § 921(a)(20) of the Armed Career Criminal Act contemplates a "conviction-specific" approach to its application. We answer both questions in the negative.

## I. BACKGROUND

At approximately 4:00 a.m. on November 1, 2005, James Baker was sitting in a car in a parking lot outside his stepdaughters' apartment complex. Officer Richard Bachman of the Wichita, Kansas Police Department was patrolling the area and thought that the vehicle, which was parked with its lights on, looked suspicious. He turned his patrol car's lights on the vehicle. As he did so, Mr. Baker got out of the car and approached the patrol car. Officer Bachman instructed Mr. Baker to stop moving and asked Mr. Baker for identification, which he provided. The dispatcher ran a routine records check on the vehicle, which revealed that the tag had been reported as lost or stolen. Based on this information, Officer Bachman detained Mr. Baker. The dispatcher then reported that a records check on Mr. Baker revealed the existence of two active city bench warrants for his arrest. Officer Bachman therefore arrested Mr. Baker. During a search incident to the arrest, Officer Bachman found a speed loader with six rounds of live ammunition in Mr. Baker's pocket. It was later discovered that the ammunition had been stolen earlier that night during a burglary of Doc's

-2-

Steakhouse in Wichita.

Mr. Baker was charged in a two-count indictment with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1), and with possession of stolen ammunition, in violation of 18 U.S.C. § 922(j). He pleaded not guilty, and the case went to trial. During the trial, Mr. Baker testified that he saw the ammunition on the ground after leaving a Halloween party at an apartment complex. According to Mr. Baker, he picked up the ammunition so that he could turn it into the police; he did not want to leave it on the ground because he was worried that a child might find it. Before Mr. Baker drove to the police station, however, he and two other individuals drove to another apartment complex. He testified that he was sitting in the car in the complex's parking lot when he saw Officer Bachman in the patrol car. Mr. Baker figured he could hand the bullets over to Officer Bachman rather than go to the police station, so he got out of the car and approached Officer Bachman, who had exited the patrol car. Officer Bachman immediately started questioning Mr. Baker about the reason he was in the parking lot, and before Mr. Baker could give him the bullets, Officer Bachman placed him under arrest and discovered the bullets. Mr. Baker also testified that he only had the ammunition for about ten minutes before he was arrested.

At the close of the evidence, Mr. Baker requested an "innocent possession" jury instruction. Specifically, he sought the following instruction:

It is a defense to the charge of unlawful possession of ammunition

-3-

that the defendant's possession of the ammunition constituted innocent possession. Possession of ammunition constitutes innocent possession where:

1. The ammunition was obtained innocently and held with no illicit purpose; and

2. Possession of the ammunition was transitory, i.e., in light of the circumstances presented there is a good basis to find that the defendant took adequate measures to rid himself of possession of the ammunition as promptly as reasonably possible.

If you find that the defendant possessed ammunition specified in Count 1 and Count 2 and that possession constituted innocent possession, you should find the defendant not guilty.

The District Court concluded that the instruction was not warranted on the evidence presented and denied the motion. Following the two-day trial, the jury convicted Mr. Baker of being a felon in possession of ammunition, but acquitted him of possession of stolen ammunition. Mr. Baker moved for judgment of acquittal or a new trial, again arguing that he was entitled to a jury instruction on "innocent possession." The District Court denied the motion.

The probation office prepared a presentence report ("PSR") recommending that Mr. Baker be sentenced as an armed career criminal under 18 U.S.C. § 924(e) and § 4B1.4 of the U.S. Sentencing Guidelines ("Guidelines") based upon the office's determination that Mr. Baker had three prior convictions for violent felonies. Mr. Baker argued that he should not be sentenced as an armed career criminal, objecting to the characterization of one of his prior convictions as a "violent felony." The District Court overruled Mr. Baker's objection and adopted

-4-

the recommendations of the PSR.  Based upon a total offense level of 33 and criminal history category VI, the Guidelines recommended a sentencing range of 235 to 293 months' imprisonment.  The District Court concluded that a sentence within the advisory range was appropriate in this case and sentenced Mr. Baker to a term of 235 months.  Mr. Baker now appeals both his conviction and his sentence, arguing that the District Court erred in refusing to give the jury an instruction on "innocent possession" and in sentencing him as an armed career criminal.[1]  We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

## I.  DISCUSSION

A.    Innocent Possession

We review jury instructions de novo, asking whether, as a whole, the instructions accurately informed the jury of the issues and the governing law. *United States v. LaVallee*, 439 F.3d 670, 684 (10th Cir. 2006).  Importantly, a criminal defendant is entitled to a jury instruction on his theory of defense if that instruction is supported by the law and has some foundation in the evidence. *United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006).  For the reasons that follow, we conclude that Mr. Baker's requested jury instruction is not

---

[1]Mr. Baker raises two other arguments on appeal: (1) 18 U.S.C. § 922(g)(1) is an unconstitutional exercise of Congress's authority under the Commerce Clause; and (2) because Mr. Baker is permitted to possess ammunition under state law, he should not be prohibited from doing so under federal law.  Mr. Baker candidly admits that Supreme Court and Tenth Circuit precedent forecloses these arguments, and he seeks merely to preserve the issues for further review.  We acknowledge that he has done so.

supported by the law.

To obtain a conviction under § 922(g)(1), the government must prove beyond a reasonable doubt that (1) the defendant was previously convicted of a felony; (2) the defendant thereafter knowingly possessed ammunition; and (3) the possession was in or affecting interstate commerce. *United States v. Ledford*, 443 F.3d 702, 713 (10th Cir. 2005). The government need not establish that the defendant possessed the contraband for any illicit purpose; the defendant's motive for possessing ammunition is irrelevant to the crime. *See United States v. DeSoto*, 950 F.2d 626, 632 (10th Cir. 1991) (explaining that motive for possessing a firearm is irrelevant to offense of being a felon in possession of a firearm); *see also United States v. Gilbert*, 430 F.3d 215, 218 (4th Cir. 2005) ("The statute [§ 922(g)] in no way invites investigation into why the defendant possessed a firearm or how long that possession lasted."); *United States v. Reynolds*, 215 F.3d 1210, 1214 (11th Cir. 2000) ("Section[] 922(g) . . . do[es] not focus on the motive or purpose of the current possession of firearms."). In fact, we have previously characterized federal firearms laws as imposing "something approaching absolute liability." *United States v. Adkins*, 196 F.3d 1112, 1115 (10th Cir. 1999) (quotation omitted).

Mr. Baker argues, however, that his motive in possessing the ammunition is (or should be) relevant to the crime charged. Specifically, he contends that if a defendant obtains ammunition innocently, with no illicit purpose, and takes

adequate measures to rid himself of it as promptly as reasonably possible, he cannot be convicted under § 922(g). As support for this contention, Mr. Baker cites *United States v. Mason*, 233 F.3d 619 (D.C. Cir. 2000), in which the D.C. Circuit recognized the "innocent possession" defense and applied it to facts similar to those in the present case.

In *Mason*, the defendant (a felon) testified that he found a gun in a bag while working as a delivery driver. *Id.* at 621. He claimed he picked up the bag and gun because he was near a school and there were children around. *Id.* He then drove to the Library of Congress, his next delivery stop, where he intended to turn the gun over to a police officer he knew. *Id.* As the defendant was entering the building, however, another officer saw the gun and arrested the defendant. *Id.* The court of appeals held that the district court should have instructed the jury on the innocent possession defense. *Id.* at 625. Specifically, the court held that the defense is available when the record reveals that:

> (1) the firearm was attained innocently and held with no illicit purpose and (2) possession of the firearm was transitory—i.e., in light of the circumstances presented, there is a good basis to find that the defendant took adequate measures to rid himself of possession of the firearm as promptly as reasonably possible.

*Id.* at 624. It reasoned that absent such a defense, "a felon-in-possession *always* will be guilty once he knowingly possesses a weapon, without regard to how or why he came into possession or for how long possession was retained." *Id.* at 623.

In our view, however, that is precisely what Congress envisioned by

-7-

prohibiting knowing, as opposed to willful, possession of ammunition. *See*

*United States v. Reed*, 114 F.3d 1053, 1057 (10th Cir. 1997) (a conviction under

§ 922(g) requires knowing possession). In criminal law, "knowing" possession

simply requires proof of knowledge of the facts that constitute the possession,

whereas a requirement of willfulness generally requires that the defendant act with

a "bad purpose." *Bryan v. United States*, 524 U.S. 184, 191, 193 (1998); *United

States v. Gilbert*, 430 F.3d 215, 218–19 (4th Cir. 2005). In other words, by

prohibiting knowing possession, the statute does not invite inquiry into the reason

the defendant possessed the ammunition, as long as the defendant knew it was

ammunition he possessed. *See Adkins*, 196 F.3d at 1115 (stating that § 922(g)

imposes criminal liability on a felon in possession of a firearm "unless that felon

truly did not know that what he possessed was a firearm").

We acknowledge that this Circuit has recognized the availability of a

necessity defense, which does permit inquiry into the circumstances under which a

felon possesses contraband. To prevail on the necessity defense, the defendant

must show that "(1) there is no legal alternative to violating the law, (2) the harm

to be prevented is imminent, and (3) a direct, causal relationship . . . exist[s]

between defendant's action and the avoidance of harm." *Al-Rekabi*, 454 F.3d at

1121 (quotation omitted).[2]   The purpose of requiring the defendant to show that

---

[2]We have also discussed, but never explicitly recognized, a "fleeting
possession" defense, which requires proof that the defendant "(1) merely
(continued...)

-8-

he had no legal alternative to violating the law "is to force an actor to evaluate the various options presented and choose the best one" because "[i]n most cases, there will be a clear legal alternative." *Id.* at 1123. Mr. Baker's requested instruction does not require that the felon contemplate legal options prior to taking contraband into possession. To permit such an instruction would expand the necessity defense and contravene the rule that the defense be "strictly and parsimoniously applied." *Id.* at 1122. In addition, we acknowledge that the Supreme Court has called into question the validity of the narrower necessity defense. *See United States v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 490 (2001) ("We note that it is an open question whether federal courts ever have authority to recognize a necessity defense not provided by statute."). We therefore decline to expand this defense.

---

[2](...continued) momentarily possessed the contraband, and (2) either lacked knowledge that he possessed contraband or had a legally justifiable reason to possess it temporally." *Al-Rekabi*, 454 F.3d at 1127 n.16 (quotations and alterations omitted). Arguably, the reason this Court has never adopted such a defense is because a defendant who establishes the elements of fleeting possession necessarily proves the elements of the necessity defense. *Id.* at 1126. Having a "legally justifiable" reason to possess contraband temporarily requires proof that the defendant had "no reasonable legal alternative . . . given the circumstances," thus making this aspect of the fleeting possession defense redundant to the necessity defense. *Id.* at 1126. And proof that a defendant lacked knowledge that he possessed contraband is not part of an affirmative defense because it negates an element of the crime itself. *See id.* at 1127 n.16; *see also Adkins*, 196 F.3d at 1115 (stating that § 922(g) imposes criminal liability on a felon for possession of a firearm for "a mere second or two unless that felon truly did not know that what he possessed was a firearm").

Mr. Baker suggests, however, that even under our existing case law, the facts of his case do not amount to a crime. We disagree. In *United States v. Santistevan*, 39 F.3d 250, 255 (10th Cir. 1994), this Court addressed whether distribution of drugs under 21 U.S.C. § 841(a)(1) requires "concrete involvement" in the distribution. In refusing to read a "concrete-involvement" requirement into the clear statutory definition of "distribution," we explained:

> [I]f the "concrete involvement" language is being used as a means of separating "true" criminal acts from other situations, such as an undercover police officer who transfers drugs to an unsuspecting buyer during the course of a sting operation, or the "Good Samaritan" private citizen who finds drugs on the street and takes them to the police station, we believe the "concrete involvement" language is an inappropriate vehicle. [Title 21 U.S.C. § ] 841(a)(1) would, if read literally, criminalize the two situations described above. While that result may seem absurd, the conclusion that Congress in fact intended this result is bolstered by the enactment of statutes like 21 U.S.C. § 885, which confers an immunity to an individual like an undercover officer who handles controlled substances during the course of his official duties. If Congress did not intend to criminalize this type of conduct because there is no evidence of any "concrete involvement," then § 885 seems unnecessary. Moreover, while § 841(a)(1) might literally extend to an individual who finds drugs on the street and brings them to a police station, we believe adequate protection exists in the sound exercise of prosecutorial discretion, rather than requiring any type of nebulous "concrete involvement" in the criminal undertaking.

*Id.* at n.7; *see also Al-Rekabi*, 454 F.3d at 1126 ("If events actually transpired as [the defendant] described them and he had given up his control over the pistol by securing it and alerting the police, it is unlikely he would even have been charged.").

-10-

Far from recognizing that being a "Good Samaritan" is a defense to criminal liability, we acknowledged in *Santistevan* that Congress in fact *intended* § 841(a)(1) to encompass a situation in which a person brings innocently found drugs to a police station. *See Santistevan*, 39 F.3d at 355 n.7. We reasoned that if the safeguard against liability for being a Good Samaritan is not provided by statute, it is found in the exercise of sound prosecutorial discretion. *Id.* We apply the same rationale today and therefore decline to recognize Mr. Baker's proposed "innocent possession" defense when Congress could have created the defense had it seen fit to do so. *See United States v. Johnson*, 459 F.3d 990, 996–97 (9th Cir. 2006) (declining to adopt an innocent possession defense to liability under § 922(g), stating that "Congress knows how to create an affirmative defense when it wishes to do so" and listing affirmative defenses provided by statute). In so doing, we join two of our sister circuits that have refused to create an innocent possession defense on facts similar to those at issue here. *See id.* at 998; *Gilbert*, 430 F.3d at 220; *see also United States v. Teemer*, 394 F.3d 59, 64–65 (1st Cir. 2005) (declining to adopt the innocent possession defense discussed in *Mason*); *United States v. Hendricks*, 319 F.3d 993, 1007 (7th Cir. 2003) (refusing to expand the necessity defense to encompass innocent possession). Because Mr. Baker's requested instruction is not supported by law, the District Court did not err in

declining to give it.[3]

B.      Application of the Armed Career Criminal Act

The Armed Career Criminal Act ("ACCA") enhances a sentence to a mandatory minimum of fifteen years for a felon convicted of possessing ammunition when the felon "has three previous convictions . . . for a violent felony or a serious drug offense."  18 U.S.C. § 924(e)(1).  A "violent felony" includes a burglary "punishable by imprisonment for a term exceeding one year." *See id.* § 924(e)(2)(B)(ii).  The ACCA exempts, however, certain convictions for which a person has had his civil rights restored:

> What constitutes a conviction of [a crime punishable by imprisonment for a term exceeding one year] shall be determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction which has been expunged, or set aside or for which a person has been pardoned or *has had civil rights restored* shall not be considered a conviction for purposes of this chapter, *unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms*.

18 U.S.C. § 921(a)(20) (emphasis added).

In 1997, 1999, and 2003, Mr. Baker was convicted of burglary under Kansas law and sentenced to more than one year's imprisonment for each conviction. Based on these three convictions, the District Court concluded that Mr. Baker was

_____

[3]*United States v. Herron*, 432 F.3d 1127 (10th Cir. 2005) is not to the contrary.  In that case, the defendant sought and obtained from the district court the instruction Mr. Baker requests here.  On appeal, however, we did not address whether an innocent possession instruction was supported by law.  The issue was whether the prosecutor improperly informed the jurors that they could disregard the innocent possession instruction.

an armed career criminal.  Mr. Baker contends that his 1997 conviction cannot be counted as a predicate offense under the ACCA because he had his civil rights restored as to this conviction under Kansas law.

We review de novo an issue of statutory interpretation involving the ACCA. *United States v. Burns*, 934 F.2d 1157, 1159 (10th Cir. 1991).  A defendant's civil rights have been restored under state law for purposes of § 921(a)(20) if the state has also restored the defendant's right to possess firearms.  *See id.* at 1160 (concluding that defendant did not have his civil rights restored because defendant did not have the right to possess firearms); *see also United States v. Dockter*, 58 F.3d 1284, 1290 (8th Cir. 1995) (explaining that "for a person to have his civil rights restored by a state for the purposes of section 921(a)(20), the relevant state must actually have restored the felon's right to possess firearms." (quotations omitted)).  Under Kansas law, release from parole or imprisonment has the effect of "restoring all civil rights lost by operation of law upon commitment," Kan. Stat. Ann. § 22-3722, including eligibility "to hold any public office . . . , to register as a voter or to vote in any election . . . or to serve as a juror in any civil or criminal case," *id.* § 21-4615(1).  But § 22-3722 does not say anything about a felon's right to possess firearms.  If taken in isolation, § 22-3722 would indicate that once a felon has been released from parole or imprisonment, the underlying offense cannot be used as a predicate offense for sentencing under the ACCA.  *See* 18 U.S.C. § 921(a)(20) (stating that a conviction is not considered a violent felony if

-13-

the defendant has had his civil rights restored "unless such . . . restoration of civil rights *expressly* provides that the person may not ship, transport, possess, or receive firearms" (emphasis added)).

In this Circuit, however, to determine whether state law expressly restricts a felon's right to possess firearms, we "look to the whole of state law." *Burns*, 934 F.2d at 1160 (consulting provisions of the Kansas criminal code to determine a felon's right to possess a firearm).[4]  And in Kansas, release from parole or imprisonment does not automatically restore the right to possess a firearm. Rather, Kansas criminalizes possession of a firearm "by a person who, within the preceding five years has been convicted of a felony . . . [or] has been released from imprisonment for a felony." Kan. Stat. Ann. § 21-4204(a)(3).  Under this statute, Mr. Baker has not had the right to possess a firearm since his first burglary conviction in 1997.  His sentence for the 1997 burglary conviction was discharged on May 13, 1999.  Under § 21-4204(a)(3), he was prohibited from possessing firearms until May 13, 2004.  Before that date, however, on March 9, 1999, Mr. Baker was convicted of his second burglary.  His sentence for that offense was

_____

[4]We note a split in the circuits regarding whether a court may look only to a certificate of restoration of civil rights upon release from parole or imprisonment to decide whether the certificate expressly limits a felon's right to possess firearms, or whether, as in this Circuit, we may look to the whole of state law to make such a determination. *See United States v. Chenowith*, 459 F.3d 635, 638 (5th Cir. 2006) (noting that the Fifth, Seventh, and Ninth Circuits adhere to the former approach, while the Fourth, Sixth, and Tenth Circuits adhere to the latter approach).

discharged on December 13, 2002. He was thus continuously prohibited from possessing firearms from the 1997 conviction until December 13, 2007.

Mr. Baker argues, however, that 18 U.S.C. § 921(a)(20) is "conviction specific," and we should therefore look to each conviction in isolation to determine whether he had his right to possess a firearm restored with respect to that particular conviction. In this way, he contends that his right to possess a firearm as to the 1997 burglary conviction was automatically restored on May 13, 2004, five years after his sentence for that crime was discharged—notwithstanding the fact that he was incarcerated at that point for another felony and, accordingly, was under another firearms restriction for that conviction.

We addressed a related question in *United States v. Burns*, 934 F.2d 1157 (10th Cir. 1991). In that case, the defendant pleaded guilty to three counts of burglary under Kansas law in 1965. *Id.* at 1158. He received a certificate of discharge from Kansas for those offenses in September 1981 while he was imprisoned for several unrelated forgery and drug offenses. *Id.* The certificate purported to restore the defendant's civil rights, "including but not limited to the right to vote, the right to hold public office, and the right to serve on a jury." *Id.* He was released from custody on the forgery and drug offenses in September 1984. *Id.* He was arrested again, however, in December of that year and remained incarcerated until March 1986. *Id.* One year later, he pleaded guilty to the federal offense of being a felon in possession of a firearm. *Id.*

-15-

The defendant argued against application of the ACCA, contending that his burglary convictions in 1965 could not be considered violent felonies under § 921(a)(20) because the certificate of discharge restoring his civil rights did not state that he could not possess a firearm. *Burns*, 934 F.2d at 1159; *see also* 18 U.S.C. § 921(a)(20). We rejected that argument because, "looking to the whole of state law," the defendant was continuously subject to the firearms disability found in Kan. Stat. Ann. § 21-4204[5] up to the time of the felon-in-possession offense; that is, there was never a five-year period between the time he was discharged from the burglary convictions and the time he was convicted for being a felon in possession that he was not in prison for a felony. *Burns*, 934 F.2d at 1160–61. Thus, "[h]is right to possess a firearm was never effectively restored." *Id.* at 1161. As a result, the burglary convictions could be used to enhance the defendant's sentence under the ACCA. *Id.* at 1160–61.

*Burns* stands for the proposition that the defendant must actually have the right to possess firearms restored to him before an otherwise-qualifying conviction is not considered a violent felony for purposes of § 924(e). Indeed, two of our sister circuits relied on *Burns* in explicitly rejecting the approach urged by Mr.

---

[5]*Burns* interpreted an older, but similar, version of the same statute at issue in this case. *See* Kan. Stat. Ann. § 21-4204(1)(b) (1991) (providing that "[u]nlawful possession of a firearm is . . . possession of a firearm with a barrel less than 12 inches long by a person who, within five years preceding such violation has been convicted of a felony under the laws of Kansas or any other jurisdiction or has been released from imprisonment for a felony").

Baker. *See United States v. Dockter*, 58 F.3d 1284, 1291 (8th Cir. 1995) ("*[A]ctual* restoration of the right to possess firearms [is required] in order for a conviction to be excludable under § 921(a)(20)." (emphasis added)); *United States v. Clark*, 993 F.2d 402, 405 (4th Cir. 1993) ("We hold . . . as a matter of federal law that a state conviction for a violent felony is not excluded from consideration under § 924(e) by the provisions of § 921(a)(20) until the law of the relevant state *effectively* restores to the defendant the right to possess firearms." (emphasis added)). We agree with these circuits, and we now hold that when state law has continuously prohibited a defendant from possessing a firearm, the state has not effectively restored the defendant his civil rights and therefore each of the defendant's otherwise-qualifying convictions constitutes a violent felony under § 924(e).

In this case, since his first burglary conviction in 1997, Mr. Baker has not been out of state custody for a period of five years between felony convictions. Thus, his right to possess a firearm was never effectively restored as to the 1997 burglary, and the District Court properly considered it a violent felony under § 924(e). The District Court therefore did not err in enhancing his sentence.

### III. CONCLUSION

Because we conclude that "innocent possession" is not a defense to being a felon in possession of ammunition, we conclude that the District Court did not err in refusing to tender such an instruction. Accordingly, we AFFIRM Mr. Baker's

conviction. In addition, because we conclude that Mr. Baker never had his right to possess firearms effectively restored under Kansas law, the District Court properly concluded that his 1997 burglary conviction is a violent felony for purposes of the ACCA. Accordingly, we AFFIRM Mr. Baker's sentence.

*United States v. Baker*, No. 07-3002

**HOLLOWAY,** Circuit Judge, dissenting:

I respectfully dissent from the majority's holding in Part I-A, which refuses to recognize a defense of innocent possession. I am persuaded by the reasoning of *United States v. Mason*, 233 F.3d 619, 625 (D.C. Cir. 2000), which recognized the defense in circumstances similar to those presented in the instant case.

It seems we should examine the majority's holding in its full implications. To do so, it is necessary, under our general precedents, to consider the evidence in the light most favorable to Defendant Baker in determining whether Baker is entitled to have the innocent possession defense considered. *See United States v. Al-Rekabi*, 454 F.3d 1113, 1121 (10th Cir. 2006). Baker testified that he had an aversion to firearms because three relatives had been killed by gunshots. He testified that he had not possessed a firearm since 1996.[1] Further, his testimony was that on this Halloween night, in spite of the very late hour, there were children out and about at the apartment complex where he found the ammunition and that he took the contraband away from that place out of concern for safety; that he intended to take the ammunition to a police station; that he made one short stop on the way to accommodate one of his companions; and that he had been in

---

[1]It is worth noting also that no firearm or other weapon was involved in this offense, nor was one involved in any of the prior convictions which formed the basis for the determination that Baker was subject to a mandatory minimum sentence of fifteen years as an "Armed Career Criminal." Of course, I do not doubt the power of Congress to provide for this result, but I do note that it is a striking anomaly.

possession of the ammunition for only ten minutes. His testimony that he approached Officer Bachman with the intention of turning the ammunition over to him was partially corroborated by the officer, who testified that Baker was approaching him before he ordered Baker to stop. Thus Baker's testimony, which should be accepted in determining if Baker made a viable innocent possession showing, demonstrated that he did not possess the ammunition for illicit purposes. *Mason*, 238 F.3d at 625.

The majority's holding is that, even if the jury believed every part of Baker's testimony, it is in keeping with Congressional intent that Baker serve nearly 20 years in prison for his conduct. I cannot agree that Congress intended such " . . . a harsh and absurd result." *Mason*, 233 F.3d at 623.

Because I find the analysis of Chief Judge Edwards in *Mason* persuasive, it is not necessary for me to embellish that rationale. I will, however, comment on two aspects of the instant case. First, as Baker argues in his brief, courts that have rejected the innocent possession defense based on a strict statutory construction and public policy grounds have generally not acknowledged the contradiction posed by the fact that they have recognized the duress or justification defenses, which are similarly not found in the statutory language and so are, presumably, contrary to the posited legislative intent of strict liability. Nor would even an entrapment defense, if established, afford relief if such strict statutory construction

were applied.[2]

Second, the majority's reliance on prosecutorial discretion is misplaced, as this case illustrates rather clearly. This is not because there was an abuse of prosecutorial discretion in this case. To the contrary, on this record it seems reasonable for the prosecutor to have decided that Baker's explanation was "plausible, albeit debatable." *Mason*, 233 F.3d at 624. That being so, it was not improper to present the case to the grand jury and to prosecute it on the basis of the resulting indictment. But to avoid injustice, the trial jury should have been instructed on the innocent possession defense on these facts. Such a narrow defense "does not offend the statute's goal of keeping guns out of the hands of convicted felons." *Mason*, 233 F.3d at 624. No doubt prosecutorial discretion will lead to a decision not to prosecute in a few easy cases. But again, the instant case shows that prosecutorial discretion is hardly a panacea, or a guarantee of even-handed justice.

I am convinced that in light of the Defendant Baker's showing, which is sufficient to have the innocent possession defense considered, I would reverse and remand for a new trial where the innocent possession defense is permitted to be considered. Accordingly I respectfully dissent.

---

[2]The entrapment defense theory likewise has no statutory genesis and Congress has never spoken on the subject. *Mathews v. United States*, 485 U.S. 58, 66 (1988).

-3-