FILED
United States Court of Appeals
Tenth Circuit

February 11, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID LEE HOLMES, II,

Defendant-Appellant.

No. 07-3355

(D. Kansas)

(D.C. No. 05-CR-40066-SAC-1)

---

ORDER AND JUDGMENT[*]

---

Before **HENRY**, Chief Judge, **ANDERSON**, and **SEYMOUR**, Circuit Judges.

---

Defendant-Appellant David Lee Holmes, Jr., received a 121-month

sentence for his conviction for possession with intent to distribute cocaine, in

violation of 21 U.S.C. § 841(a)(1). On appeal, he challenges his conviction on

three grounds. First, Mr. Holmes argues that the district court erred in denying

his motion to suppress contraband because the police lacked a constitutional basis

upon which to conduct the searches of and seizures from his person and vehicle.

Applying *McCray v. Illinois*, 386 U.S. 300, 312-314 (1967), which sets the

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

standard under which an informant's tip may supply probable cause, we affirm the district court's determination.

Second, Mr. Holmes argues that the district court erred in denying his motion to compel discovery regarding the Government's confidential informant. Applying *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986) and *United States v. Mendoza-Salgado*, 964 F.2d 993, 1000-1001 (10th Cir. 1987), which conclude that no disclosure is necessary for non-participant informants, we affirm the district court's determination.

Third and finally, Mr. Holmes argues that the district court erred in refusing to supply an instruction on the necessity defense to the jury. We hold that Mr. Holmes provided insufficient evidence for a jury to find this defense, which is "strictly and parsimoniously" given, and we affirm the district court's determination. *See United States v. Baker*, 508 F.3d 1321, 1325 (10th Cir. 2007) (The general rule is the necessity defense is "strictly and parsimoniously applied.").

## I.  BACKGROUND

On April 13, 2005, Topeka Police Department Officer Doug Garman received information from a confidential informant, who advised him that a black male, "David," possessed approximately one ounce of crack cocaine. The informant told Officer Garman that David (1) was wearing black clothing with a black ball cap that had red on it, (2) was driving a tan Chevy Caprice, and (3) had

individually-packaged cocaine inside his pants. The informant disclosed the location of David's vehicle and the name of David's vehicle passenger, Andre Baker ("Dre-Dre").

Officer Garman characterized the informant's degree of reliability as extremely high. Prior to April 2005, Officer Garman and the confidential informant cooperated in four successful controlled purchases of drugs. In addition, the informant had previously provided information on seven other individuals involved in drug distribution in Topeka.

Based on the informant's tip, Officer Garman drove to a location identified by the informant, set up surveillance, and had the informant come to the scene to confirm the location as correct. The informant himself drove to the location and personally identified the residence; the vehicle's make, color, and location; Mr. Holmes, Mr. Holmes's clothing, and Mr. Holmes's companion, as those named previously. A records check of the vehicle identified by the informant revealed that the car was registered in the name of a known drug distributor.

When Mr. Holmes and Dre-Dre left in the identified vehicle, Officer Garman followed. Thereafter, Officer Garman called another police officer, Officer Youse, to conduct the traffic stop. Officer Youse stopped the car in a Taco Tico restaurant parking lot, and Officer Garman joined him there. Thereafter, Officer Garman approached the car and observed Mr. Holmes "immediately reach towards the right side of his waist." Aple's Br. at 3. Officer

3

Garman commanded both Mr. Holmes and Dre-Dre to show their hands; neither complied.

Officer Garman drew his gun and repeated his command, and this time, both obeyed. Following Officer Garman's orders, Mr. Holmes exited the car and was handcuffed. Officer Garman performed a pat-down of Mr. Holmes beginning with his waistband, which revealed a plastic bag of marijuana in his pockets.

Officer Garman then conducted a search of Mr. Holmes, finding two pieces of crack cocaine inside the brim of the hat he was wearing. Then, Officer Garman searched the vehicle and discovered more cocaine and a loaded pistol. *Id*.

On July 14, 2005, a grand jury indicted Mr. Holmes for possession of crack cocaine with intent to distribute. Mr. Holmes filed a motion to suppress the drugs found during a search of the vehicle, as well as incriminating statements he made after his arrest. He also filed a motion to compel discovery regarding the informant, which the district court denied. A jury convicted Mr. Holmes and the district court sentenced Mr. Holmes to 121 months' imprisonment. This appeal followed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## II. THE DISTRICT COURT DID NOT ERR BY DENYING MR. HOLMES'S MOTION TO SUPPRESS.

Mr. Holmes contends that the officers violated his Fourth Amendment rights by illegally stopping and searching him in the Taco Tico parking lot. The district court disagreed, finding that the facts and circumstances gave rise to

4

reasonable suspicion sufficient to withstand Fourth Amendment scrutiny. Although we note that the district court's reliance on a "reasonable suspicion" rationale might be called into question, we affirm the district court's conclusion and uphold the constitutionality of the search and seizures.

As the United States Supreme Court instructed in *Ornelas v. United States*, appellate courts review determinations of reasonable suspicion and probable cause *de novo*. 517 U.S. 690, 691 (1996). In so doing, the "reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.*

A.    *The Initial Justification for the Stop was Based on Reasonable Suspicion.*

The district court held that the confidential informant's tip, along with the police officers' subsequent observations, gave rise to reasonable suspicion sufficient to justify the investigative detention and subsequent pat-down of Mr. Holmes's person and vehicle for weapons. Because the district court denied Mr. Holmes's motion on the basis that the police had reasonable suspicion to conduct an investigative stop, the district court did not reach the issue of probable cause. *See Terry v. Ohio*, 392 U.S. 1, 37 (1968) (upholding the stop of a person by law enforcement officers based upon "reasonable suspicion" that a person may have been engaged in criminal activity).

5

In *Terry v. Ohio*, the Supreme Court affirmed the long-standing rule that, where police conduct is subject to the warrant requirement of the Fourth Amendment, a reviewing court must "ascertain whether 'probable cause' existed to justify the search and seizure which took place." 392 U.S. at 20. The Court noted, however, that the probable cause standard does not control in all circumstances, specifically, that of swift police "action predicated upon the on-the-spot observations of the officer on the beat." *Id.* In the latter category of cases, a more flexible "reasonable suspicion" standard applies, which justifies police inquiry where specific and articulable facts exist that "taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Id.* at 21. We agree that the informant's detailed description of Mr. Holmes, including his attire, location, vehicle, and companion; together with the informant's in-person confirmation that the location, vehicle, and persons identified were those previously named; and Officer Garman's surveillance, including the running of Mr. Holmes's license plate, more than satisfy *Terry*'s reasonable suspicion test for an investigatory stop. Thus, we reject Mr. Holmes's challenge to the validity of the initial stop.

B.     *The Search and Seizure Were Justified.*

We turn next to Mr. Holmes's challenge to the searches and seizures of Mr. Holmes's person and vehicle. Based on the record, the district court concluded that Officer Garman not only had reasonable suspicion to conduct a *Terry* stop,

6

but also had reasonable suspicion to handcuff Mr. Holmes, reach into Mr. Holmes's pocket to seize a plastic bag containing marijuana, and seize crack cocaine from the brim of Mr. Holmes's hat and pants, as well as a loaded firearm from a gym bag in the back seat of Mr. Holmes's car. Under *Minnesota v. Dickerson's* "plain view" doctrine, the district court concluded that the incriminating character of the plastic bag of marijuana was apparent; thus, Officer Garman's further inquiry was warranted. *See* 508 U.S. 366, 375 (1993) (articulating the "plain view" doctrine).

Pursuant to the plain view doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *Id.* However, as the *Dickerson* Court stated, "[if] police lack probable cause to believe that an object in plain view is contraband without conducting some further search of the object – *i.e.*, if its incriminating character [is not] immediately apparent – the plain-view doctrine cannot justify its seizure." *Id.* at 375 (internal quotations and citations omitted). Under the "plain-feel" doctrine, a corollary to *Dickerson*'s "plain-view" doctrine, an officer may seize contraband detected during a pat down where the officer knows the nature of the item. *United States v. Thomson*, 354 F.3d 1197, 1200 (10th Cir. 2003). According to the district court, a plain-feel analysis justifies Officer Garman's seizure of the marijuana in this case.

7

As an experienced police officer, Officer Garman may be uniquely qualified to distinguish between contraband and non-contraband items based on texture. Nevertheless, how it was immediately apparent that a small plastic bag, concealed within the fabric of Mr. Holmes's pants, contained marijuana and not anything from a range of other, non-contraband substances is unclear. Because we hold that Officer Garman had probable cause to conduct a search, we need not resolve the issue under *Dickerson*.

As the Supreme Court stated in *Illinois v. Gates*, probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." 462 U.S. 213, 238 (1983). The *Gates* Court adopted a "totality-of-the-circumstances approach" to the determination of probable cause, taking into account the "factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id*. at 230-31. Inasmuch as probable cause is a "fluid concept – turning on the assessment of probabilities in particular factual contexts," so too do informants' tips "come in many shapes and sizes from many types of persons." *Id*. at 232. When performing a probable cause inquiry involving a confidential informant, the informant's veracity, reliability, and basis of knowledge are "highly relevant." *Id.* at 230. These factors are not mutually exclusive, however, and "should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that

8

contraband or evidence is located in a particular place." *Id*. (internal quotations omitted).

The Supreme Court has stated that a tip from a reliable informant, in conjunction with police corroboration, is sufficient to establish probable cause to arrest. *McCray v. Illinois*, 386 U.S. 300, 304 (1967); *see also Draper v. United States* 358 U.S. 307, 313 (1959) (where an informant has been "accurate and reliable" in the past, and information provided is corroborated prior to defendant's arrest, there is probable cause for arrest, even if the officer's observation alone would not amount to probable cause). Although the confidential informant in *McCray* had been a source for five years (versus the matter of months here), the elements of *McCray*'s probable cause test are met here. Officer Garman had a history with this informant; the informant had provided reliable information in the past; the informant provided detailed information regarding the defendant and made a subsequent in-person identification and confirmation of the defendant. Prior to the stop, Officer Garman surveyed the area and ran a check on Mr. Holmes's vehicle, which revealed registration in the name of a known drug distributor. Mr. Holmes made "furtive gestures" and refused Officer Garman's initial request to raise his hands. Rec. vol. 1, doc. 31, at 2-7. Because police possessed a constitutional basis – probable cause – upon which to perform the searches of and seizures from Mr. Holmes, we affirm the determination of the district court.

## III. THE DISTRICT COURT DID NOT ERR IN DENYING MR. HOLMES'S MOTION TO COMPEL DISCOVERY REGARDING THE GOVERNMENT'S INFORMANT.

A.    *Maintaining the informant's anonymity did not deny Mr. Holmes due process of law.*

Mr. Holmes next challenges the district court's denial of his motion to compel, contending that the investigatory stop was "based solely on the word of the informant," and "[t]he requested information about this person was critical for the court and counsel to make a determination as to his or her credibility." Aplt's Br. at 14. Specifically, he contends that the absence of discovery denies him (1) due process and (2) his Sixth Amendment right to confront witnesses against him. Reviewing the district court's order denying Mr. Holmes's motion to compel discovery for abuse of discretion, *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 (10th Cir. 1999), we affirm.

Under the Rules of Evidence,

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.

Fed. R. Evid. 501.

In 1957, the United States Supreme Court abrogated the government's absolute nondisclosure privilege of a confidential informant's identity at common

10

law and held that the informer's privilege is limited where the interest in the free flow of information is outweighed by an individual's right to prepare an effective defense. *See Roviaro v. United States*, 353 U.S. 53, 64 (1957) (refusing to extend privilege to an informant's identity where the informant was "the sole participant, other than the accused, in the transaction charged," and thus was "the only witness in a position to amplify or contradict the testimony of government witnesses."). The *Roviaro* Court empowered trial courts to require disclosure where "the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of cause." *Id*. at 61. As the Court observed:

> Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.

*Id*.

Since its decision in *Roviaro*, the Supreme Court has revisited the nondisclosure privilege. For example, in 1965, the Court held that the Sixth Amendment right of confrontation is obligatory on the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 407 (1965) ("[T]he right of an accused to be confronted with the witnesses against him must be determined by the same standards whether the right is denied in a federal or state proceeding .

11

. . .").

While the district court must allow the disclosure of the informant's identity if the informant's testimony "might be relevant to the defendant's case and justice would best be served by disclosure," *United States v. Reardon*, 787 F.2d 512, 517 (10th Cir. 1986), we have consistently held that where the informer was not a participant in the illegal transaction, no disclosure is required. *United States v. Mendoza-Salgado,* 964 F.2d 993, 1000-01 (10th Cir. 1992) (citing *United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987); *United States v. Freeman,* 816 F.2d 558, 562 (10th Cir. 1987)*; Reardon*, 787 F.2d at 517). "[M]ere speculation about the usefulness of an informant's testimony" is not enough to require disclosure. *Scafe*, 822 F.2d at 933. The government is not required to supply information about an informer to a defendant when the informer merely provides the initial introduction. *Reardon*, 787 F.2d at 517.

Mr. Holmes has submitted no information indicating that the confidential informant was a participant in the illegal transaction. We see no error in the trial court's refusal to require disclosure of the informant in this case.

B. *Maintaining the government informant's anonymity did not violate Mr. Holmes's Sixth Amendment rights to confrontation.*

According to Mr. Holmes, Officer Garman provided "lengthy testimony regarding the reliability of th[e confidential] informant" at motions hearings prior to trial. Aplt's Br. at 3. In addition,

12

Officer Garman testified the informant had personally observed Mr. Holmes in possession of the cocaine in question . . . [and] that the informant told him the cocaine would be in Mr. Holmes' pants. . . . Officer Garman went on to testify that the informant described the car Mr. Holmes was driving . . . Officer Garman went on to testify that he made contact with the confidential informant and requested that the informant go to an area where the informant would be able to re-identify the vehicle and confirm that the vehicle at question was the one that he had provided to Garman.

*Id.* at 3-4. Mr. Holmes argues that Officer Garman's statements regarding the informant's statements violated Mr. Holmes's Sixth Amendment rights, because:

[d]isclosure would have provided defense counsel an opportunity to interview the informant prior to the court deciding the motion to suppress, and to have access to his prior history and the agreement which existed between him and the government or law enforcement officers. . . . The accused also sought to discover the criminal record of the informant. . . . Similarly, defense counsel could have cross-examined the witness . . . .

Aplt's Br. at 14.

As the Supreme Court observed in *Crawford v. Washington*, the Confrontation Clause applies to witnesses against the accused–in other words, those who bear testimony. Testimony, in turn, is typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact. 541 U.S. 36, 51 (2004) (internal citation and quotation marks omitted). As a result, statements that are not offered to prove the truth of the matter asserted may not be excluded under *Crawford*. *Id.* at 59 n.9. Indeed, as we ruled in *United States v. Faulkner*, "the [Confrontation] Clause restricts only statements meeting the

13

traditional definition of hearsay." 439 F.3d 1221, 1226 (10th Cir. 2006) (citing Fed. R. Evid. 801(c)).

Based on the record, the informant's tip was made for the limited purpose of explaining why a government agent had reason for the stop, search and seizure of Mr. Holmes, not for the purpose of establishing a fact. *See*, *e.g.*, *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987) (stating that out of court statements are not hearsay when "offered for the limited purpose of explaining why a Government investigation was undertaken"). Testimony as to the truth of the matters asserted came from the testimony of Officer Garman.

In addition, we hold that Mr. Holmes's contention that he was unconstitutionally deprived of the right to confront such a witness because the state did not produce the informant to testify against him is "absolutely devoid of merit." 386 U.S. at 312 (citing *Cooper v. California*, 386 U.S. 58, 62 n.2 (1967)).

## IV.   THE DISTRICT COURT DID NOT ERR IN REFUSING TO SUPPLY AN INSTRUCTION FOR THE NECESSITY DEFENSE ON MR. HOLMES'S BEHALF.

Third and finally, Mr. Holmes contends that his offer to take the cocaine from Dre-Dre so as to avoid violence constituted "necessity" sufficient to warrant an instruction regarding his "necessity defense" to the jury. More specifically, Mr. Holmes claims that he was afraid of Dre-Dre because Dre-Dre had a previous murder conviction. Mr. Holmes maintains that he offered to take the cocaine

14

from Dre-Dre to avoid a shoot out with police. Based on these facts, Mr. Holmes believes he was entitled to a jury instruction on the "necessity defense," and thus the district court's refusal to submit a necessity instruction to the jury was error. Aplt's Br. at 19-20.

We review for abuse of discretion a district court's refusal to supply an instruction for the necessity defense and consider the instructions as a whole *de novo* to determine whether "they adequately apprise the jury of the issues and the governing law." *United States v. Williams*, 403 F.3d 1118, 1195 n.7 (10th Cir. 2005). If the district court's failure to give the instruction was erroneous, "we must determine whether the conviction must be set aside because the error had a substantial influence on the outcome of the trial or leaves us in grave doubt as to its influence on the verdict. If the error is harmless the conviction will stand." *United States v. Al-Rekabi*, 454 F.3d 1113, 1119 (10th Cir. 2006) (internal quotation marks omitted).

A defendant is entitled to a theory-of-defense instruction if the defense theory is "supported by sufficient evidence for a jury to find in [the] defendant's favor." *United States v. Grissom*, 44 F.3d 1507, 1512 (10th Cir. 1995); *see also Al-Rekabi*, 454 F.3d at 1122 (holding that a defendant "must prove his claimed defenses by a preponderance of the evidence"). Mr. Holmes bears the burden to produce evidence of each element sufficient to warrant its consideration by the jury. *United States v. Bailey*, 444 U.S. 394, 415 (1980). The defense may be

15

asserted "*only* by a defendant who was confronted with . . . a crisis which did not permit a selection from among several solutions, some of which did not involve criminal acts." *Al-Rekabi*, 454 F.3d at 1121 (internal quotation marks omitted) (emphasis supplied). District courts must "strictly and parsimoniously" apply the defense. *United States v. Baker*, 508 F.3d 1321, 1326 (10th Cir. 2007) (internal quotation marks omitted).

In support of his necessity defense theory, Mr. Holmes cites an unpublished decision, *United States v. Benally*, which defines the necessity defense as warranted where: "(1) there is no legal alternative to violating the law, (2) the harm to be prevented is imminent, and (3) a direct, causal relationship is reasonably anticipated to exist between defendant's action and the avoidance of harm." Aplt's Br. at 20 (citing *United States v. Benally*, 233 F. App'x 864, 868 (10th Cir. 2007) (internal quotation marks omitted)); *Al-Rekabi*, 454 F.3d at 1121.

Our reading of *Benally*, and our Circuit precedent, however, undermine Mr. Holmes's defense. In *Benally*, the defendant sought a necessity defense on the charge of possessing a firearm, arguing that her possession stemmed from an attempt to avoid a fight on school grounds. In *Benally*, we refused to issue a necessity instruction where the defendant had knowledge of and access to a firearm when she entered a school zone, knew that the weapon was next to her in the vehicle, and could exercise dominion and control over the firearm. *Id*. at 870.

Assuming Mr. Holmes's version of the facts as true, Mr. Holmes similarly

16

knew that his companion, Dre-Dre, possessed drugs, those drugs were next to him in the vehicle, and he had access to those drugs (as evidenced by his receipt upon "offering" to carry them).

"The purpose of requiring the defendant to show that he had no legal alternative to violating the law is to force an actor to evaluate the various options presented and choose the best one because in most cases, there will be a clear legal alternative." *Baker*, 508 F.3d at 1326 (internal quotation marks omitted). Indeed, as the Sixth Circuit noted in *United States v. Singleton*, "the keystone of the analysis is that the defendant must have no alternative - either before or during the event - to avoid violating the law." 902 F.2d 471, 473 (6th Cir. 1990). Mr. Holmes has provided no evidence to show that he had no legal alternative to socially engaging with a felon convicted of murder (Dre-Dre), inviting to chauffeur him, and offering to hold his drugs.

## V. CONCLUSION

We therefore AFFIRM the district court's denial of Mr. Holmes's Motion to Suppress, AFFIRM the denial of Mr. Holmes's Motion to Compel, and AFFIRM the district court's refusal to issue an instruction on the necessity defense.

Entered for the Court,

Robert H. Henry
Circuit Judge

17